IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRANDON BRADFORD, | ) |
| Movant, | ) |
| | ) No. 3:22-cv-00065 |
| v. | ) |
| | ) Judge Trauger |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

Pending before the Court is movant Brandon Bradford's pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence previously imposed by this court. (Doc. No. 7). *See United States v. Bradford*, No. 3:16-cr-00116-1 (M.D. Tenn.) [hereinafter cited as "Crim. Doc. No. ___"]. Bradford is an inmate of the United States Penitentiary McCreary in Pine Knot, Kentucky.

The United States has filed a response to the motion, urging that none of Bradford's claims present a valid basis for post-conviction relief. (Doc. No. 13). Bradford has filed a reply in response to the government's response. (Doc. No. 17). For the following reasons, the movant's motion will be denied, and this action will be dismissed.

**I.    Background**

Bradford was convicted after a four-day jury trial of conspiring to distribute and possess with intent to distribute a kilogram or more of heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. (Crim. Doc. Nos. 276, 277). The court sentenced Bradford to 360 months of imprisonment. (Crim. Doc. No. 321). Bradford then appealed his sentence to the Sixth

1

Circuit Court of Appeals, which affirmed on November 3, 2020. (Crim. Doc. No. 346). On February 1, 2022, Bradford filed a timely motion pursuant to 28 U.S.C. § 2255. (Doc. No. 7).[1]

## II. Standard of Review

This court must vacate and set aside a movant's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Thus, to prevail upon a motion for habeas relief under 28 U.S.C. § 2255, a prisoner must show that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) the proceedings were affected by an error of fact or law that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A prisoner must sustain his allegations by a preponderance of the evidence.

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the court is to determine after a review of the answer and the record of the underlying criminal case whether an evidentiary hearing is required. In addition, where the same judge considering the Section 2255 motion also conducted the underlying criminal proceedings, she may rely on her own recollections of those proceedings. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). If the motion to vacate, the answer, and the underlying record show conclusively that movant is not entitled to relief under Section 2255, there is no need for an evidentiary hearing. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

---

[1] Because the original Section 2255 motion submitted by Bradford lacked his signature, the court ordered Bradford to submit a properly-signed motion. (Doc. Nos. 1, 4).

**III. Analysis**

Bradley attacks his conviction and sentence on five grounds. All five grounds allege that Bradford's attorneys provided constitutionally ineffective representation.

To prevail on a claim for ineffective assistance of counsel, the movant bears the burden of showing, first, "that his counsel provided deficient performance," and, second, that "the deficient performance prejudiced [his] defense." *Sylvester v. United States*, 868 F.3d 503, 509-10 (6th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Trial counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "In making this showing, '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Sylvester*, 868 F.3d at 511 (quoting *Strickland*, 466 U.S. at 693). Instead, the movant "must show that 'counsel's errors were so serious as to deprive the [movant] of a fair trial, a trial whose result is reliable.'" *Id*. (quoting *Strickland*, 466 U.S. at 687). "[A] court deciding an ineffective assistance claim" need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### A. Trial counsel's failure to object to the career offender calculation

Bradley first alleges that sentencing[2] counsel was ineffective for failing to object to the court's career offender designation. (Doc. No. 8 at PageID# 55). "Counsel's willingness to accept the district court's erroneous finding that Petitioner was a career offender without objections," Bradford contends, "caused a[] 'significant increase' in the range of sentence Petitioner could have received." (*Id*. at PageID# 57).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the movant to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Assuming arguendo that Bradford could show deficient performance by counsel, Bradford cannot show prejudice.

---

[2] Cathryn Armistead represented the defendant at sentencing. Trial counsel, from a different firm, were James Wiggington and John Tennyson. All of these lawyers were retained.

4

The government concedes that defense counsel at sentencing did not object to the calculations in the Presentence Report ("PSR") that found Bradford to be a career offender. (Doc. No. 13 at PageID# 96). Defense counsel argued that twenty years would be an appropriate sentence, rather than the career offender sentence of thirty years. (*See* Crim. Doc. No. 345 at PageID# 2503-2506). The court then determined that Bradford qualified as a career offender under USSG § 4B1.1[3] and sentenced him to 360 months of imprisonment.

On appeal, Bradford argued that the court erred in determining that he was a career offender. (Crim. Doc. No. 346 at PageID# 2517). In considering this argument, the Sixth Circuit noted that it generally reviewed a district court's sentencing decision for procedural reasonableness under an abuse-of-discretion standard. (*Id*. at PageID# 2520). However, because Bradford had not challenged the career-offender enhancement at the district court level, the Sixth Circuit reviewed the issue only for plain error. (*Id*.). Ultimately, the Sixth Circuit found that Bradford's designation as a career offender did not affect his guidelines calculation and therefore Bradford was unable to demonstrate that the district court committed plain error. (*Id*.)

Bradford's sentencing guideline range of 360 months to life imprisonment was based on a total offense level of 42 and a criminal history category of VI. USSG Ch.5, Pt. A. Bradford's offense level of 42 was based on the quantity of drugs involved in the conspiracy, the possession of a firearm, his leadership role, and his obstruction of justice, not his career offender status. Moreover, Bradford was placed in criminal history category VI because he had total criminal history points of 17; he was not placed in criminal history category VI because he qualified as a career offender, which automatically places one in category VI, no matter the point count.

---

[3] The court found "that if anyone qualified as a career offender, it is Mr. Bradford, who almost as soon as he was paroled from a drug selling heroin distribution charge with the state, he's right back into that business." (Crim. Doc. No. 329-1 at PageID# 1253, Sealed).

5

Therefore, as recognized by the Sixth Circuit, any failure by Bradford's counsel to object to Bradford's career offender status had no effect on his substantial rights or his sentencing outcome. (Crim. Doc. No. 346 at PageID# 2520). Thus, Bradford cannot establish that counsel's failure to object prejudiced the defense. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Bradford has not done so. This claim fails.

### 2. Trial counsel's failure to object to statements made at trial by Larry Shelton

Second, Bradford alleges that trial counsel erred by not objecting to testimony given by witness Larry Shelton. (Doc. No. 8 at PageID# 59). According to Bradford, Shelton's testimony included improper hearsay testimony and "was most damaging" and "highly prejudicial to the Petitioner." (*Id*. at PageID# 59-60).

Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions to the rule against hearsay. *See* Fed. R. Evid. 802. The alleged hearsay referenced by Bradford are statements by Larry Shelton that "Bradford did not threaten him [Larry Shelton], but threaten[ed] his brother [James Shelton]"; that Bradford called his brother a "snitch bitch" and threatened to "pass Shelton's paperwork around the BOP"; and that Bradford stated that someone was going to "slap" James Shelton's mother. (Doc. No. 8 at PageID# 60).

On appeal, Bradford argued that Larry Shelton's testimony should have been excluded because its probative value was outweighed by its prejudice to defendant under Federal Rule of Evidence 403. (Crim. Doc. No. 37-2 at PageID# 2517). The Sixth Circuit reviewed this claim under the abuse-of-discretion standard. (*Id*.) In doing so, the Court found that, "[a]lthough Bradford argues that the probative value of Larry Shelton's testimony was outweighed by its unfair prejudicial effect because merely calling someone a 'snitch' does not show consciousness of guilt, Larry Shelton testified that he overheard Bradford stating that he was going to get a witness stabbed while in prison and that Bradford encouraged other prisoners to 'do something to him.'" (*Id*. at PageID# 2517-18). Because "threats against a witness constitute an effort by the defendant to tamper with the substance of the government's case, and thus are probative of a defendant's awareness that the government is likely to prevail at trial," the Sixth Circuit held that the district court did not abuse its discretion in determining that Larry Shelton's testimony had probative value that was not substantially outweighed by any risk of undue prejudice. (*Id*. at PageID# 2518) (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003) (internal quotations omitted).

In the instant Section 2255 motion, although Bradford contends that the admission of Larry Shelton's testimony was "highly prejudicial" to Bradford, his second ground for relief focuses on counsel's alleged failure to object to Larry Shelton's testimony as hearsay, not on an alleged failure by counsel to object to unfairly prejudicial testimony. And for good reason, because counsel did object to Larry Shelton's testimony on grounds of unfair prejudice. (Crim. Doc. No. 344 at Page ID# 2396-97) ("The defense . . . do[es] object on 404(b)[4] ground[s] that it is not—that the probative

---

[4] It appears that counsel mistakenly cited Federal Rule of Evidence 404(b), which prohibits the introduction of prior bad acts and crimes of the defendant, instead of Federal Rule of Evidence 403, possibly thinking of Tennessee Rule of Evidence 403(b), which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of

7

value is highly outweighed by the prejudice."). According to Bradford, Larry Shelton's testimony included hearsay because he testified about a threat made to his brother, James Shelton.

During Bradford's trial, Larry Shelton testified that, despite the fact that the statements made by defendant were directed to his brother James, Larry heard them himself. (*See* Crim. Doc. No. 344 at PageID #2387) ("He wasn't talking to me. He was talking to my brother. I was right beside him. I heard everything . . . ."). The challenged statements were statements made by Bradford and heard by the witness himself; those statements, therefore, were not hearsay. Fed. R. Evid. 801(d)(2)(A). Because the challenged statements by Larry Shelton did not constitute inadmissible hearsay, but, rather, were admissions, counsel was not ineffective for failing to object to this testimony as hearsay. This claim will be dismissed.

### 3. Sentencing counsel's failure to raise the "*Alleyne* Error"

Bradford alleges in his third ground for relief that, when the court accepted the PSR's calculations of the amount of heroin reasonably foreseeable to him in the conspiracy, the court engaged in factfinding prohibited by *Alleyne v. United States*, 570 U.S. 99 (2013), and sentencing counsel provided ineffective assistance by failing to object. (Doc. No. 8 at PageID# 62). According to Bradford, the court's judicial factfinding "improperly subjected him to a[n] increased statutory minimum." (*Id*. at PageID# 64).

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Id*. at 490. In *Alleyne*, the case relied on by Bradford, the Supreme Court held that any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. 570 U.S.

---

undue delay, waste of time, or needless presentation of cumulative evidence." Tennessee Rule of Evidence 403(b) tracks Federal Rule of Evidence 403 almost word-for-word.

8

99, 102. Thus, any fact that increases the mandatory minimum is an "element" that must be submitted to the jury. *Id*. at 108 (explaining that "*Apprendi*'s definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor.'"). However, "*Alleyne* did not extend *Apprendi* to facts that do not increase the prescribed statutory penalties." *United States v. Johnson*, 732 F.3d 577, 584 (6th Cir. 2013). The Supreme Court in *Alleyne* expressly stated: "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." 570 U.S. 99, 116 (citing *Dillion v. United States*, 560 U.S. 817).

Thus, the *Alleyne* rule has no application to judicial factfinding that merely determines a defendant's offense level under the Sentencing Guidelines. *See Johnson*, 732 F.3d 577, 584 ("Even aside from Johnson's concession with respect to a portion of the drug quantities attributed to him, the district court's factual determination with respect to the additional quantities did not violate his Sixth Amendment rights as articulated in *Alleyne*."). *See also United States v. Ramírez-Negrón*, Nos. 10-1524, 11-1388, 2014 WL 1856762, at *49 (1st Cir. May 9, 2014) ("We flatly reject the proposition that all drug quantity calculations made under the advisory Guidelines must be submitted to a jury. That would be both contrary to *Alleyne* and an extension of *Alleyne*.")

That is what happened here. At Bradford's sentencing hearing, the court merely accepted the drug quantity that was contained in the Presentence Report, to which no objection had been lodged. This finding "merely determine[d]" Bradford's offense level under the Sentencing Guidelines and did not violate his Sixth Amendment rights as articulated in *Alleyne*. Because the court properly determined Bradford's offense level under the Sentencing Guidelines, sentencing counsel did not act ineffectively when she failed to object to the court's factual determination as

in violation of Bradford's rights under *Alleyne*. Consequently, Bradford cannot prevail on this ineffective assistance of counsel claim. The claim will be dismissed.

### 4. Trial counsel's failure to investigate and file the motions requested by Bradford

Bradford next alleges that trial counsel failed to investigate Bradford's case and file the motions requested by Bradford. (Doc. No. 8 at PageID# 65).

First, Bradford alleges that he asked trial counsel to file a motion to suppress evidence and a "motion to challenge", which counsel did not do. (Doc. No. 8 at PageID# 65). "'[A] single, serious error may support a claim of ineffective assistance of counsel,'" including "a failure to file a plainly meritorious motion to suppress." *Hendrix v. Palmer*, 893 F.3d 906, 922-23 (6th Cir. 2018) (quoting *Kimmelman v Morrison*, 477 U.S. 365, 383 (1986)). "But 'the failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *Id*. "For such a failure to constitute deficient performance, the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have failed.'" *Id*. (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011)); *see also Johnston v. Mitchell*, 871 F.3d 52, 63 (1st Cir. 2017) (observing in the context of the failure to file a motion to suppress that "a lawyer's performance does not fall to the level of a Sixth Amendment violation under *Strickland* simply because the lawyer fails to pursue any and all nonfrivolous strategies"). "A petitioner also must show that counsel had no reasonable strategic rationale for not filing the motion." *Id*. (citing *Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir. 2011).

Here, in his original motion and in his reply to the government's response to the motion, Bradford does not identify the legal grounds for a motion to suppress or what evidence he believes should have been suppressed. He fails to explain what a motion to suppress or a "motion to challenge" could have accomplished and how counsel's failure to file either motion had any effect

on the outcome of Bradford's case. Bradford therefore fails to establish any deficient performance on the part of counsel in failing to file a motion to suppress or a "motion to challenge." Further, Bradford fails to establish that counsel's deficient performance prejudiced the defense.

Second, Bradford alleges that counsel failed to investigate "key information that could refute the government's case against him." (Doc. No. 8 at PageID# 65). Although trial counsel does not have an absolute duty to investigate particular facts or a certain line of defense, counsel does have a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary. *Strickland*, 466 U.S. at 691. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel. Rather, courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (internal citations and quotations omitted).

A reasonable investigation does not require counsel to "leave no stone unturned." *Perry Anthony Cribbs v. State*, No. W2006-01381-CCA-R3-PD, 2009 WL 1905454, at *49 (Tenn. Crim. App. July 1, 2009). Rather, "[r]easonableness should be guided by the circumstances of the case, including information provided by the defendant, conversations with the defendant, and consideration of readily available resources." *Id*. The United States Supreme Court has said, "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." *Strickland*, 466 U.S. at 691.

Here, in neither his original Section 2255 motion nor in his reply to the government's response to his motion does Bradford explain what "key information" he shared with counsel that

Bradford believes counsel should have investigated. Bradford does not explain how the investigation of such information would have had any effect on his case. Bradford therefore fails to establish that counsel performed deficiently by failing to investigate this unidentified information or that Bradford was prejudiced by counsel's performance. This claim, like the others so far, fails.

### 5. Appellate counsel's decision regarding which arguments to pursue on appeal

Finally, Bradford alleges that his appellate counsel[5] was ineffective because he focused on certain arguments and ignored others. (Doc. No. 8 at PageID# 66-67). Specifically, Bradford contends that appellate counsel's failure to raise what Bradford calls the "*Alleyne* error" constituted deficient performance.

The *Strickland* test also applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, (2000); *Burger v. Kemp*, 483 U.S. 776. To evaluate a claim of ineffective assistance of appellate counsel, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* (citing *Wilson*).

As explained *supra*, there was no *Alleyne* error in this case. Therefore, appellate counsel did not perform deficiently by failing to pursue that argument. *See Fishback v. Parris*, No. 3:12-cv-130, 2017 WL 5665203, at *10 (M.D. Tenn. Nov. 27, 2017) ("It cannot be ineffective assistance of appellate counsel to fail to raise claims that would not have been successful."). Bradford does not identify any other specific alleged failures by appellate counsel. The court thus cannot assess

---
[5] On appeal, Bradford was represented by yet another lawyer—Kevin Schad of the Federal Public Defender's office in Cincinnati.

the strength of the other claims Bradford believes appellate counsel should have pursued. Bradford has failed to prove that any deficiency in appellate counsel's performance caused Bradford prejudice. This claim fails and will be dismissed.

## IV. Conclusion

For these reasons, the movant is not entitled to an evidentiary hearing, and his claims fail. Accordingly, the movant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 7) will be denied, and this action will be dismissed.

## V. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Cases requires that a district court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court finds that the movant has not satisfied this standard and will therefore deny a certificate of appealability as to each claim raised in Bradford's Section 2255 motion.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge

13

Case 3:22-cv-00065   Document 18   Filed 12/20/22   Page 13 of 13 PageID #: 135